**SAVE OUR TEN ACRES et al.,**
**Plaintiffs-Appellants,**

v.

**Rod KREGER, Acting Administrator,**
**General Services Administration,**
**et al., Defendants-Appellees.**

**No. 72-2165.**

United States Court of Appeals,
Fifth Circuit.

Jan. 16, 1973.

Alexander Boskoff, Washington, D. C., Michael J. Salmon, Mobile, Ala., for plaintiffs-appellants.

William M. Cohen, Larry G. Gutter-ridge, Dept. of Justice, Washington, D. C., Robert A. Prince, Springfield, Va., Irwin Coleman, Jr., Asst. U. S. Atty., C. S. White-Spunner, Jr., U. S. Atty., Mobile, Ala., Kent Frizzell, Asst. Atty. Gen., Jacques B. Gelin, John D. Helm, Attys., Dept. of Justice, Washington, D. C., for defendants-appellees.

Before MORGAN, CLARK and INGRAHAM, Circuit Judges.

CLARK, Circuit Judge:

What is the proper standard for judicial review of an agency's threshold determination *not to file* an environmental impact statement under the National Environmental Policy Act of 1969 (NEPA)?[1]

This is an action to enjoin the construction of a federal office building on a downtown site in Mobile, Alabama, brought by an organization known as Save Our Ten Acres (alphabetically shorthanded: "SOTA"). SOTA is a voluntary unincorporated association comprised of approximately 572 employees of the Corps of Engineers, formed to resist the selection of the urban site. The Corps of Engineers is to occupy the greater part of the new building on completion. The site selection decision was made by the General Services Administration (GSA). The basis of SOTA's attack on that decision in the court below and in the instant appeal is limited to an alleged failure of the GSA to comply with the NEPA requirement that all federal agencies file a detailed statement of the environmental impact of all major federal actions which may significantly affect the quality of the human environment.[2]

---

1. 42 U.S.C.A. § 4331 et seq. (Supp.1972).

2. Cooperation of agencies; reports; availability of information; recommendations; international and national coordination of efforts

    The Congress authorizes and directs that, to the fullest extent possible: (1) the policies, regulations, and public laws of the United States shall be interpreted and administered in accordance with the policies set forth in this chapter, and (2) all agencies of the Federal Government shall—

        \*    \*    \*    \*    \*

    (C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

It is undisputed that the defendants have proceeded with this site selection and construction without preparing an NEPA statement. However, they argue that no such environmental impact statement was required in this case because the building, even if it be a major federal action within the meaning of the statute,[3] will not significantly affect the quality of the human environment. The court below refused any relief, reasoning that the foregate determination by GSA that this project did not significantly affect the quality of the human environment could not be disturbed unless the court found it to be arbitrary, capricious or an abuse of discretion. To best effectuate the Act this decision should have been court-measured under a more relaxed rule of reasonableness, rather than by the narrower standard of arbitrariness or capriciousness. We therefore vacate and remand.

The question presented in this case has not yet been addressed by this circuit, though the question has arisen in a number of reported cases.[4] In support

---

(i) the environmental impact of the proposed action,

(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

(iii) alternatives to the proposed action,

(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

Prior to making any detailed statement, the responsible Federal official shall consult with and obtain the comments of any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved. Copies of such statement and the comments and views of the appropriate Federal, State, and local agencies, which are authorized to develop and enforce environmental standards, shall be made available to the President, the Council on Environmental Quality and to the public as provided by section 552 of Title 5, and shall accompany the proposal through the existing agency review processes;

42 U.S.C.A. § 4332 (Supp.1972).

3. The agency, although stopping short of actually conceding that the project constitutes a major federal action, has pitched its argument in this court as well as the court below in terms of whether or not the building will significantly affect the environment, and the trial court based its opinion on that ground.

4. In Ely v. Velde, 451 F.2d 1130, 1138 (4th Cir. 1971), the court, relying on Calvert Cliffs' Coordinating Comm. v. United States A.E.C., 146 U.S.App.D.C. 33, 449 F.2d 1109 (1971), held that the statutory scheme placed a heavy burden on the agency to show its compliance with the procedural requirements of the NEPA, and apparently required the filing of an impact statement. In *Calvert Cliffs' supra*, the District of Columbia Circuit enunciated a stricter standard than arbitrariness to determine whether an agency had complied with the procedural requirements of the NEPA, and in Natural Resources Defense Council, Inc. v. Morton, 458 F.2d 827, 834 (D.C. Cir.1972), it announced the application of "[a] rule of reason" to test the agency's decision to omit from the impact statement a discussion of the possible alternatives to the project; neither of these cases, however, dealt with the precise question involved in this case. See also Environmental Defense Fund, Inc. v. United States Army Corps of Engineers, 470 F.2d 289 (8th Cir., 1972). The question was raised but left unanswered in Scherr v. Volpe, 466 F.2d 1027, 1034 (7th Cir. 1972), and in Hanly v. Mitchell, 460 F.2d 640, 647 (2d Cir. 1972).

At least two district courts have gone so far as to say that the agency has no discretion relative to exercise to whether the impact statement is required, but that a court will determine as a matter of law whether the project is a major program significantly affecting the environment. Scherr v. Volpe, 336 F.Supp. 886, 888 (W.D.Wisc.1971), aff'd on alternate holding, 466 F.2d 1027, 1034 (7th Cir. 1972) ; National Resources Defense Council, Inc. v. Grant, 341 F.Supp. 356, 366 (E.D. N.C. 1972). Another district court has held that the impact statement is required if the action would arguably have an adverse environmental impact, at least where the agency has not provided a detailed explanation of its decision. Students Challenging Regulatory Agency Procedures v. United States, 346 F.Supp. 189, 201 & n. 17 (D.D.C.1972). But see Goose Hollow Foothills League v.

of its argument that the arbitrary or capricious standard should govern, the agency relies on the well-settled proposition that, in the absence of fraud, administrative findings of fact are conclusive if supported by any substantial record evidence. However, this usual fact determination review rule ought not be applied to test the basic jurisdiction-type conclusion involved here. NEPA was intended not only to insure that the appropriate responsible official considered the environmental effects of the project, but also to provide Congress (and others receiving such recommendation or proposal) with a sound basis for evaluating the environmental aspects of the particular project or program. The spirit of the Act would die aborning if a facile, ex parte decision that the project was minor or did not significantly affect the environment were too well shielded from impartial review. Every such decision pretermits all consideration of that which Congress has directed be considered "to the fullest extent possible." The primary decision to give or bypass the consideration required by the Act must be subject to inspection under a more searching standard.

We find solid support for this position in the recent Supreme Court decision in Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). There the Court narrowly construed the discretion of the Secretary of Transportation to approve highway routes under a "no prudent and feasible alternative" standard. Conceding the statutory language at issue in *Overton Park* differs from that of the

NEPA, nevertheless, both statutes (at a minimum) require the acting agency or the administrator to consider particular environmental factors before making certain determinations. While the Court made it clear that the ultimate merit decision based upon a weighing of these environmental considerations should be reviewed under the arbitrary, capricious, or abuse of discretion standard, a thorough study of *Overton Park* teaches that a more penetrating inquiry is appropriate for court-testing the entry-way determination of whether all relevant factors should ever be considered by the agency.[5] We reject as overly formalistic the argument that *Overton Park's* stricter standard of reasonableness is applicable only if the wording of the statute *expressly* conditions the exercise of authority upon a determination that certain prerequisites are met.

■■  Under the review standard we hold is required, the court must determine whether the plaintiff has alleged facts which, if true, show that the recommended project would materially degrade any aspect of environmental quality. In this case SOTA charges, *inter alia*, that the construction of the building will create severe urban parking and traffic congestion problems, will aggravate an already substantial air pollution problem, and is to be improperly located on the floodplain of the Mobile River. Though we express no opinion on the merits of SOTA's claim, we note that SOTA's allegations on their face may well satisfy the criteria of GSA's own statement of policy for implementation of the NEPA.[6]

Romney, 334 F.Supp. 877, 879 (D.Ore. 1971) which appears to have applied the standard of arbitrariness. See also Citizens For Reid State Park v. Laird, 336 F. Supp. 783, 788–789 (D.Me.1972).

5. Environmental Defense Fund, Inc. v. United States Army Corps of Engineers, 470 F.2d 289 (8th Cir., 1972), presented the question of the proper standard of review of the completeness and accuracy of the NEPA statement. In that case the court applied the bifurcated test of *Overton Park*, indicating

that the more searching scope of authority test would apply to a review of the impact statement to "determine if the agency reached its decision after a full, good faith consideration and balancing of environmental factors.

6. c.  Environmental subject areas include, but are not limited to:
    *       *       *       *       *
    (2) Human population distribution changes and its effect upon urban congestion (including vehicular traffic), water supply, sewage treatment facili-

■ Since SOTA has raised substantial environmental issues concerning the proposed recommended project here, the court should proceed to examine and weigh the evidence of both the plaintiff and the agency to determine whether the agency reasonably concluded that the particular project would have no effects which would significantly degrade our environmental quality. This inquiry must not necessarily be limited to consideration of the administrative record, but supplemental affidavits, depositions and other proof concerning the environmental impact of the project may be considered if an inadequate evidentiary development before the agency can be shown. *See* Citizens to Preserve Overton Park, Inc. v. Volpe, 335 F.Supp. 873, 876–877 (W.D.Tenn.1972) (on remand). If the court concludes that no environmental factor would be significantly degraded by the project, GSA's determination not to file the impact statement should be upheld. On the other hand, if the court finds that the project may cause a significant degradation of some human environmental factor (even though other environmental factors are affected beneficially or not at all),[7] the court should require the filing of an impact statement or grant SOTA such other equitable relief as it deems appropriate.

■ Not only do we iterate that this decision has not the slightest intent of indicating what ruling should eventuate from the retest we require, but we also would emphasize that it is not the province of the courts to review any actual decision on the merits (if one be required) as to the desirability *vel non* of the project. We merely hold that it is the courts' function to insure that the mandate of the statute has been carried out and that all relevant environmental effects of the project be given appropriate consideration by the responsible official whenever it is unreasonable to conclude that the project is without the purview of the Act.

SOTA also argues that the consolidation of the hearing on the preliminary injunction and on the permanent injunction pursuant to Rule 65(a)(2), Fed.R. Civ.P., deprived it of the opportunity to fully develop its case. *See* Nationwide Amusements, Inc. v. Nattin, 452 F.2d 651 (5th Cir. 1971). An examination of the record reveals no element of surprise or prejudice in this procedure in the case at bar. The contention is not meritorious. Of course, this point will become moot if the court below determines to conduct the entire hearing anew.

■ Nor do we find any error in the transfer of the suit from the District of Columbia to the Southern District of Alabama. The decision to require a change of venue in the interest of justice is largely committed to the sound

---

ties, other public services, and threats to health;

(3) Actions which directly and indirectly affect human beings through water, air, and noise pollution, and undesirable land use patterns. . . .

PBS 1095.1A, Attachment B.
*See also* Hanly v. Mitchell, *supra* n. 4, 460 F.2d at 647.

7. 1. *Determination of what is a "major Federal action significantly affecting the quality of the human environment".* This is in large part a judgment based on the circumstances of the proposed action, and the determination shall be included as a normal part of the decision-making process.

\*　　\*　　\*　　\*　　\*

b. Actions significantly affecting the human environment can be construed to be those that:

(1) Degrade environmental quality even if beneficial effects outweigh the detrimental ones;

(2) Curtail range of possible beneficial uses of the environment including irreversible and irretrievable commitments of resources;

(3) Serve short-term rather than long-term environmental goals;

(4) May be localized in their effect, but nevertheless, have a harmful environmental impact; and

(5) Are attributable to many small actions, possibly taken over a period of time, that collectively have an adverse impact on the environment.

PBS 1095.1A, Attachment B.

468

discretion of the district court. 28 U.S. C.A. § 1404 (1962). We find no abuse of that discretion here.

The judgment of the court below is

Affirmed, in part, vacated, in part, and remanded with directions.