Louis R. STEPHENS, John R. Kolberg,
Phyllis Petarius, Richard Jaeschke, and
all others similarly situated, Plaintiffs,

v.

Brock ADAMS, Karl S. Bowers, John O.
Hibbs, Dale Cattanach, Robert T. Huber,
Reuben Bartelt, Vincel Demshar and
John J. Malone, and their agents, em-
ployees, etc., Defendants.

No. 78–C–390.

United States District Court,
E. D. Wisconsin.

May 4, 1979.

James C. Newcomb, Milwaukee, Wis., for plaintiffs.

Michael E. Perino, Asst. Atty. Gen., Madison, Wis., for Dale Cattanach and Robert Huber.

Willis J. Zick, Waukesha County Corp. Counsel, Waukesha, Wis., for Vencel Demshar and Reuben Bartelt.

Clayton A. Cramer, New Berlin City Atty., Waukesha, Wis., for John J. Malone.

Joseph P. Stadtmueller, Asst. U. S. Atty., Milwaukee, Wis., for Brock Adams, John O. Hibbs and Karl S. Bowers.

## MEMORANDUM AND ORDER

WARREN, District Judge.

This is a civil action in which the plaintiff, land owners of property adjacent to the Moorland Road, are seeking declaratory relief and an injunction enjoining the defendants from proceeding with widening of the Moorland Road in a 4.33 mile section wholly within the city of New Berlin, Wisconsin. The state and federal defendants have moved to dismiss or in the alternative for summary judgment. Their motions are supported by various affidavits and documents. The motions will be discussed separately.

In their complaint, plaintiffs allege that the federal government's action is in violation of the public hearing section of the Federal-Aid Highway Act and implementing regulations (23 U.S.C. § 128 and 23 CFR §§ 790.1 through 790.11), that the environmental impacts have not been adequately assessed as required by the National Environmental Policy Act of 1969 (42 U.S.C. §§ 4321 through 4332, hereinafter NEPA), and that violations of the fifth and fourteenth amendments have occurred.

The Moorland Road project involves the widening of a 4.33 mile section of highway which lies within the city of New Berlin, Wisconsin. New Berlin is a city within Waukesha County. Moorland Road is currently a two-lane highway which runs through primarily residential areas. The purpose of the project is to change the section into a four-lane divided urban arterial highway with a 110 foot right-of-way, with parking lanes and left turn bays at major intersections. The purpose for widening the road is to increase its vehicle carrying capacity and to enable it to carry an increased average daily traffic load safely. The federal government's involvement in the Moorland Road project is as a supplier of a portion of the funding. Pursuant to 23 U.S.C. § 128(a):

[A]ny State highway department which submits plans for a Federal-aid highway project involving the bypassing of, or going through, any city, town, or village, either incorporated or unincorporated, shall certify to the Secretary that it has had public hearings, or has afforded the opportunity for such hearings, and has considered the economic and social effects of such a location, its impact on the environment, and its consistency with the goals and objectives of such urban planning as has been promulgated by the community. Any State highway department which submits plans for an Interstate system project shall certify to the Secretary that it has had public hearings at a convenient location, or has afforded the opportunities for such hearings, for

the purpose of enabling persons in rural areas through or contiguous to whose property the highway will pass to express any objections they may have to the proposed location of such highway. Such certification shall be accompanied by a report which indicates the consideration given to the economic, social, environmental, and other effects of the plan or highway location or design and various alternatives which were raised during the hearing or which were otherwise considered.

Under 23 U.S.C. § 105(a), a state can "avail itself of the benefits" of federal highway aid by "submit[ting] to the Secretary for his approval a program or programs of proposed projects for the utilization of the funds apportioned" by Congress.

As indicated earlier, one of the grounds for relief asserted by plaintiff is that the Federal Highway Administration failed to comply with the location and design hearing requirements of the Federal-aid Highway Act and the implementing regulations. The regulations applicable to 23 U.S.C. § 128 are contained within Part 790 of 23 CFR.

The federal defendants claim full compliance with the public hearing requirements of federal law. The affidavit of John O. Hibbs, the division administrator of the Federal Highway Administration for the State of Wisconsin, details the actions taken by the Federal Highway Administration in approving funding for the Moorland Road project.

Mr. Hibbs' affidavit establishes that pursuant to 23 U.S.C. §§ 302(b) and 105(d), direction of the project was assumed by the Waukesha County Highway and Transportation Commission. On July 12, 1965, Moorland Road received approval as part of the secondary federal highway system, thereby becoming eligible for federal aid for highway construction. In October of 1975, the Federal Highway Administration determined that the Moorland Road project would not cause a significant effect on the quality of the human environment. Therefore, it recommended that the Wisconsin Division of Highways prepare a draft nega-

tive declaration rather than a full-blown environmental impactment statement. A negative declaration is permissible when the "proposed action will not have a significant impact upon the quality of the human environment of a magnitude to require the processing of an EIS (environmental impact statement)." 23 CFR § 771.11.

In February of 1976, the Federal Highway Administration approved a draft negative declaration which contains a proposal by Waukesha County to undertake the 4.33 mile Moorland Road project. With approval of the draft negative declaration, the state undertook to comply with the hearing requirements set forth in Part 790 of 23 CFR. That regulation provides that "a state may satisfy the requirements for a public hearing by . . . publishing two notices of opportunity for public hearing and holding a public hearing if any written requests for such a hearing are received." 23 CFR § 790.6(a).

On April 14 and April 21, 1976, notices were published in the Waukesha Freeman and the New Berlin Citizen, two local newspapers. These notices afforded the affected parties the opportunity to request a public hearing only on the southern portion of the 4.33 mile section, the only part of the project for which funds were then available. No timely requests for a hearing were received.

In September of 1976, the Federal Highway Administration (FHWA) approved the original final negative declaration and the preliminary plans for the project. Even though the final negative declaration was approved by the Federal Highway Administration, however, a location and design public hearing for the entire length of the project was held on January 20, 1977, because of expressions of public concern about the project. According to Mr. Hibbs, the hearing conformed with the procedural requirements set forth in 23 CFR § 790.7. The notices, published on December 16, 1976, and January 13, 1977, in local newspapers, clearly comply with 23 CFR § 790.7(a). (Proofs of publication, which meet the requirements of 23 CFR § 790.7, are attached to and are a part of the Hibbs affidavit).

In July of 1977, apparently in response to public concerns over the Moorland Road project, a revised final negative declaration was submitted which certified that public hearings had been held and that the state had considered both the economic and social effects of the project and its impact upon the environment. Furthermore, the state submitted a transcript of the public hearing as required by 23 U.S.C. § 128(b). The reasons for making changes in the Moorland Road project are contained within a letter dated July 7, 1977, addressed to Mr. Hibbs. This letter expresses the county's concern for the landowners affected by the project, but also indicates that the county was responding to projected traffic volumes on the Moorland Road. On July 15, 1977, Mr. Hibbs approved the final negative declaration. In his affidavit, Mr. Hibbs notes that the highway was modified in width, in the southern portion, from 130 feet to 110 feet.

Plaintiff claims that the hearings in this case did not comply with federal regulations, because the design and corridor considerations were discussed in one hearing rather than two separate hearings, and because the project doubled in size after the initial approval of the project.

■ With respect to plaintiff's claim that the combined corridor and design hearing violates federal law, plaintiff relies on the Federal-aid highway program manual and the cases of *Lathan v. Brinegar*, 506 F.2d 677, 684–86 (9th Cir. 1974); and *Elliot v. Volpe*, 328 F.Supp. 831, 840 (D.Mass.1971). Although plaintiff is partially correct in asserting that separate corridor and design hearings must be held, plaintiffs are incorrect in asserting that separate hearings must be held in all cases or that separate hearings were required in the present case.

The hearing requirements are set forth in 23 CFR § 790.5. Subparagraph (a) provides:

Both a corridor public hearing and a design public hearing must be held, or an opportunity afforded for those hearings, with respect to each Federal-aid highway project that: (1) is on a new location; or

(2) would have a substantially different social, economic, or environmental effect; or (3) would essentially change the layout or function of connecting roads or streets.

Subparagraph (b) provides, however, that:

[A] single combined corridor and highway design public hearing must be held, or the opportunity for such a hearing afforded, on all other projects before route location approval, except as provided in paragraph (c) of this section.

(Paragraph (c) is applicable to minor road changes and is thus not applicable here.)

After a review of the uncontroverted documents available in this case, it is clear that this case does not fall within the separate hearing requirements provided for in 23 CFR § 790.5(a). Therefore, the combined hearing was adequate.

■ With respect to plaintiff's claim that the project was doubled in size from that considered at the original hearing, such claim is simply not supported in the record. Although at the hearing it was only contemplated that two miles of the 4.33 mile project would be undertaken at that time, and although the county and state finally received approval for the entire 4.33 mile segment, nevertheless, the entire 4.33 mile segment was contemplated by the defendant as is clear from the earlier negative declaration which states that the entire project would go forward as soon as the funds became available. Clearly, the entire project was considered by both the state and the federal government. Furthermore, the notices published in December of 1976 and January of 1977 make it clear that the hearing held on January 20, 1977, was for the purpose of discussing the entire project from Highway 15 to Highway 59.

Based upon the foregoing, it is clear that the Federal Highway Administration fully complied with the hearing requirements of federal law.

■ Plaintiff's next attack against the federal government's motion for summary judgment is based upon a claim that the government failed to consider alternative

locations at the public hearing. Under the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321–4347, environmental concerns must be considered by agencies when involved in federal projects. Under 42 U.S.C. § 4332(C), however, the mandates of NEPA only apply to "Federal actions significantly affecting the quality of the human environment, . . ." Once having determined that the environmental impacts are insignificant, it is clear that an environmental impact statement is simply not necessary. One district court stated that environmental impact statements are not necessary in cases where the environmental impacts are insignificant because "[t]he time that the preparation of a full-blown impact statement demands is out of proportion to the environmental risks that exist." *Pokorny v. Costle*, 464 F.Supp. 1273 (D.Neb.1979). In the present case, in light of the initial findings of the FHWA, the negative declaration was adequate. The technical requirements of a final negative declaration as to alternatives are included with 23 CFR § 771.11.

■ The final negative declaration must "include a summary and disposition of the public hearing comments . . . including alternatives raised at the public hearings." (23 CFR § 771.11(e)). As is indicated earlier, the revised final negative declaration was prepared in response to the public hearing and changes were made in the project to reflect the public concerns expressed at the hearing. At pages 6–26 of the revised final negative declaration, are summaries of the questions and alternatives proposed at the public hearing. As to each of these questions or alternatives, the revised final negative declaration gives answers. Furthermore, several alternatives are discussed at pages 3–4, including alternative routes.

In the Court's opinion, the requirement that the final negative declaration discuss the alternatives raised at the public hearing was made in the present case.

Plaintiff next asserts that the federal government failed to adequately consider the environmental effects of the project.

In two places in their brief, plaintiffs assert that John Hibbs, the Federal Highway Administrator for the State of Wisconsin, failed to consider the environmental effects with sufficient care. Plaintiff claims that the negative declarations statement to the effect that "the conversion of the two-lane county road into a multi-lane urban highway is without impact" is a ludicrous statement. Plaintiffs have simply misread the statements concerning the project. In the negative declaration, it is not stated that the project will have no impact, rather it is stated that the project will have "no significant effect on the quality of the human environment."

■ Plaintiffs claim that the approvals made by John Hibbs were arbitrary, capricious and an abuse of discretion because he approved the negative declarations submitted by the county without personally weighing the factors. It must first be observed that a court should avoid making inquiries "into the mental processes of administrative decisionmakers . . . ." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971). Furthermore, there appears nothing wrong with the administrator having delegated authority for preparation of the negative declaration. *See, Westside Property Owners v. Schleslinger*, 415 F.Supp. 1298, 1301 (D.Ariz.1976). There, the court found nothing wrong with the Air Force having employed the services of a consulting firm to "assist it in the preparation of the Environmental Impact Statement contemplated by that section." The Court discussed the function of the head of the agency stating:

> 42 U.S.C. § 4332(2)C requires a detailed statement of the environmental impact of a federal project by the responsible federal official, it does not, however, state how the official should obtain the information upon which his statement is based. *Iowa Citizens for Environmental Quality v. Volpe*, 487 F.2d 849, 8 Cir. Nor does it require that the head of the agency personally review and approve the Environmental Impact Statement. *Life of the*

*Land v. Brinegar,* [9th Cir.,] 485 F.2d 460, *cert. denied,* 416 U.S. 961, 94 S.Ct. 1979, 40 L.Ed.2d 312. The act allows the responsible federal official to delegate some of the preparation of the Environmental Impact Statement. The requirement of 42 U.S.C. § 4332(2)C is that the federal agency must bear the responsibility for the ultimate work product. *Id.* at 467. See also *Sierra Club v. Lynn,* 502 F.2d 43, 5 Cir.; *Citizens Environmental Council v. Volpe,* 484 F.2d 870, 10 Cir., *cert. denied,* 416 U.S. 936, 94 S.Ct. 1935, 40 L.Ed.2d 286 and *Iowa Citizens for Environmental Quality, supra.*

This same reasoning should apply when an agency reviews a negative declaration.

■ Based upon the foregoing, the Court cannot find that the actions of John Hibbs were either arbitrary or capricious or an abuse of discretion. Therefore, plaintiff's attack on the environmental considerations and administrative law considerations are without legal force. Furthermore, even under the more stringent "reasonableness" standard discussed in *Pokorny v. Costle, supra,* the negative declarations withstand scrutiny.

Plaintiff's final attack on the federal government's involvement in the Moorland Road project is based upon the due process clauses of the fifth and the fourteenth amendments to the United States Constitution. The basis of plaintiff's claim is that the FHWA regulations were not complied with in this case. As indicated earlier, the FHWA regulations, specifically part 790 of CFR 23, provide that public hearings must be held and also provide the type of hearings that must be held. As indicated earlier, these requirements were complied with and, therefore, the due process standards set forth in the regulations were met.

■ Although not discussed in plaintiff's brief in opposition to defendant's motion for summary judgment, the Court would take note of several further significant points. First, the Court has reviewed the final negative declaration which was approved by the FHWA and would note that because the final negative declaration is reasonable and supported by the record, it should and will be upheld by this Court. *Vermont Yankee Nuclear Power Corporation v. The NRDC,* 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978). Second, the Court would note, as indicated earlier, that the hearing requirements were fully satisfied by the combined location and design public hearing held for the entire project on January 20, 1977. Finally, the Court would note that the federal defendant's determination that a negative declaration would suffice in this case rather than a full-blown environmental impact statement was not arbitrary, capricious, nor an abuse of discretion, nor was it unreasonable. *See, Scherr v. Volpe,* 466 F.2d 1027 (7th Cir. 1972); *Pokorny v. Costle, supra.* It is clear that the plaintiffs cannot merely rely on their allegations that there is a significant impact on the environment, but rather must produce some evidence that such an impact will occur. *See, e. g., Save Our Ten Acres v. Kreger,* 472 F.2d 463, 466 (5th Cir. 1973); Federal Rules of Civil Procedure 56(e). As is clear from the record, plaintiffs have not produced any evidence to show that the negative declaration was incorrect.

Before discussing the standards for summary judgment, the Court will first discuss the state defendants' motion to dismiss, or in the alternative, for summary judgment. The state's involvement in this project is limited indeed. Pursuant to 23 U.S.C. § 302(b), the state of Wisconsin turned over direction of the project to the Waukesha County Highway and Transportation Commission. No state funds have been or will be involved in this urban highway project. Plaintiff's claim against the state of Wisconsin is based upon pendent jurisdiction.

In support of their motions for summary judgment, state defendants have submitted the affidavit of Robert Baker, the Acting Director of the Bureau of Environmental Analysis and Review for the Wisconsin Department of Transportation. Attached to Mr. Baker's affidavit as exhibit II is a copy of the environmental evaluation relied upon by the federal government. Mr. Baker's affidavit sets forth that all of the require-

ments of the applicable Wisconsin Environmental Protection Act (WEPA) Wis.Stats. § 1.11(2) have been complied with. Further, according to Mr. Baker, the federal government's determination to utilize a negative declaration rather than an EIS was a reasonable determination and is supported by the record. The state asserts that the negative declaration and hearings held in this case were adequate under Wisconsin law. *In Wisconsin Environmental Decade v. The Public Service Commission*, 79 Wis.2d 161, 255 N.W.2d 917 (1977), the Wisconsin Supreme Court held that Wisconsin Statute § 1.11(2)(e) was patterned after 42 U.S.C. § 4332, and therefore federal law discussing section 4332 of the NEPA is persuasive. In a later case, the Wisconsin Supreme Court held that a state agency's decision accepting a negative declaration is to be weighed by a reasonableness standard, rather than a standard that questions whether the agency's actions were arbitrary and capricious. *Wisconsin Environmental Decade v. The Public Service Commission*, 79 Wis.2d 409, 256 N.W.2d 149 (1977). In discussing the higher reasonableness standard, the Wisconsin Supreme Court set forth what should be considered in analyzing an agency's decision. The court stated that an analysis of the agency's decision must examine two aspects:

> First, has the agency developed a reviewable record reflecting a preliminary factual investigation covering the relevant areas of environmental concern in sufficient depth to permit a reasonably informed preliminary judgment of the environmental consequences of the action proposed; Second, giving due regard to the agency's expertise where it appears actually to have been applied, does the agency's determination that the action is not a major action significantly affecting the quality of the human environment follow from the results of the agency's investigation in a manner consistent with the exercise of reasonable judgment by an agency committed to compliance with WEPA's obligations? *Id.* at 424–425, 256 N.W.2d at 158.

■ In reviewing the record in this case, it is clear that the Wisconsin defendant's actions are reasonable as defined in the second *Wisconsin Environmental Decade* case. The initial determinations were carefully considered by the federal agency, but as indicated by the Baker affidavit, the project was developed not only to comply with the National Environmentals Protection Act, but also the Wisconsin Environmental Protection Act. In requiring only a negative declaration, the state of Wisconsin followed the guidelines set forth in the revised Guidelines for the Implementation of the Wisconsin Environmental Policy Act, promulgated by the Governor of Wisconsin's Executive Order No. 26. Under this order, the state need not require a full-blown environmental impact statement if it determines that such an evaluation is not necessary after reviewing a document known as the screen worksheet for evaluating environmental significance. Such a document was prepared. (See Exhibit II attached to the Baker Affid.)

In reviewing the action taken by the state of Wisconsin in this case, in light of the analysis also made by the federal officials, there is little doubt in the Court's mind that the necessary hearing and environmental analyses were done by the state officials as well as the federal officials. As indicated earlier, hearings were held at which hearings the concerned parties could appear and express their opinions. Such opinions were made a part of the negative declaration, and furthermore, in response to such expressions of concern over the project, the local officials, to whom authority was granted to manage the project under 23 U.S.C. § 302(b), made changes in response to the hearing. Therefore, there is no question but that there was no violation of Wisconsin Statutes 1.11(2). Furthermore, the state's actions with respect to the Moorland Road Project meet the stringent reasonableness standard of review.

The final question for consideration, therefore, is whether summary judgment is appropriate in this case as applied to the federal and state defendants. Under Rule 56 of the Federal Rules of Civil Procedure,

summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). Furthermore, Rule 56(e) provides that:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

In reviewing this case, the Court has analyzed the environmental considerations made by the state and federal officials in reviewing the negative declarations prepared by the Waukesha County officials. Although as indicated earlier, it is possible for a court to overturn an administrative decision, plaintiff must make some showing that the project would have a material effect on the environment. *See Save Our Ten Acres v. Kreger, supra.* Furthermore, the hearing and due process requirements set forth in the federal statutes and federal regulations and in the United States Constitution were fully met in the present case.

Therefore, based upon the foregoing analysis, the motions of the federal and state defendants for summary judgment must be and hereby are granted.