CONCORD TOWNSHIP, DELAWARE COUNTY, COMMONWEALTH OF PENNSYLVANIA and the Nicholas Newlin Foundation, Richard D. Wood and Margaretta Wood, Richard D. Wood, Jr., and Jeanette Wood, Pierre S. Du Pont, IV and Elise Ravenel Du Pont, William D. Wood and Catherine M. Wood, George Wood and Dorothea Wood and Wawa Dairy Farming Corp., Petitioners,

v.

The UNITED STATES of America and the Interstate Commerce Commission, Respondents,

The Southeastern Pennsylvania Transportation Authority, Octoraro Railway, Inc., and the Commissioners of Chester County, Intervenors.

(ICC Finance Docket No. 28334).
No. 79–1887.

United States Court of Appeals,
Third Circuit.

Argued May 22, 1980.

Decided June 23, 1980.

John W. Wellman (argued), Petrikin, Wellman, Damico & Carney, Media, Pa., Michael J. Glasheen, Clark, Ladner, Fortenbaugh & Young, William J. Woodward, Jr. (argued), George J. Miller, Dechert, Price & Rhoads, Philadelphia, Pa., for petitioners.

Evelyn G. Kitay, Atty. (argued), I.C.C., Washington, D.C., John H. Shenefield, Asst. Atty. Gen., Robert Lewis Thompson, Atty., Richard A. Allen, Gen. Counsel, Frederick W. Read, III, Associate Gen. Counsel, U.S. Dept. of Justice, Washington, D.C., for respondents.

Edward F. Mannino (argued), Dilworth, Paxson, Kalish, Levy & Kauffman, Samuel W. Morris, Jr., Marguerite A. Sivak, Philadelphia, Pa., for intervenors.

Before ADAMS, GIBBONS and RO-SENN, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

This is a petition pursuant to 28 U.S.C. § 2342(5) (1976) to review an order of the Interstate Commerce Commission (Commission) granting the Octoraro Railway, Inc. (OCTR) a Certificate of Public Convenience and Necessity for a freight rail service over a 41.7 mile line between Colora, Maryland and Wawa, Pennsylvania.[1] The petition challenges only the grant of authority to operate the easterly nine mile portion of the line between Chadds Ford Junction, Pennsylvania, and Wawa. Petitioners are Concord Township and the Nicholas Newlin Foundation which are located in the nine mile segment, and a number of other property owners whose properties are located along the line between Concordville (situated between Chadds Ford Junction and Wawa) and Wawa. They contend that the Commission erred in determining that public convenience and necessity would be enhanced by the grant to OCTR of a certificate to operate over the disputed nine mile segment, and that it also erred in concluding that an environmental impact statement was unnecessary. We conclude that the petition for review should be granted. Since the applicable law and the scope of review differ with respect to the petitioners' separate contentions, we consider them separately.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 8, 1976, OCTR filed an application with the Commission pursuant to section 1(18) of the Interstate Commerce Act,[2] for a Certificate of Public Convenience and Necessity to operate a freight railroad on the line described above. The right of way for this proposed freight line was a former Penn Central Transportation Company branch line, which had provided freight and passenger service from 1859 to 1948, and only freight service from 1948 until September, 1971. In that month, Hurricane Agnes caused a huge flood in the area, making the line totally inoperable. An application for abandonment was filed with the Commission in March, 1972. The Commission's jurisdiction over that railroad abandonment proceeding terminated with the enactment of the Regional Rail Reorganization Act, 45 U.S.C. §§ 701–794 (Supp. 1979), and the Penn Central abandonment petition was consequently dismissed without Commission action on the merits. Thereafter, the United States Railway Commission excluded this branch line from the Final System Plan for Conrail. In 1976, the Southeastern Pennsylvania Transportation Authority (SEPTA), an agency of the Commonwealth, acquired the inoperative right-of-way under section 206(c)(1)(D) of the Regional Rail Reorganization Act, 45 U.S.C. § 716(c)(1)(D), with funds supplied by the federal Urban Mass Transit Authority (UMTA). SEPTA leased the right-of-way to the Board of Commissioners of Chester County, Pennsylvania, and they in turn leased the line to OCTR, a private corporation, for the purpose of establishing and operating a freight service on the line.

Verified statements on the need for the service were evaluated under the Commission's Modified Procedure. See 49 C.F.R. § 1100.43 (1979). On October 25, 1978, Commission Review Board Number 5 approved the application for operation between Colora, Maryland, and Chadds Ford Junction, Pennsylvania, but denied authority to operate from Chadds Ford Junction eastward to Wawa. Administrative appeals from the Review Board's decision were filed by OCTR, the operator of the freight service, and by SEPTA, the actual owner of the right-of-way. Some of the petitioners opposed these appeals. In May of 1979, the

---

1. The order was entered in ICC Finance Docket No. 28334: Octoraro Railway, Inc.—Operation —Over Southeastern Pennsylvania Transportation Authority Between Wawa, Pa. and Colora, Md., in Delaware and Chester Counties, Pa. and Cecil County, Md.

2. See 49 U.S.C. § 1(18), recodified at 49 U.S.C. § 10901 (Supp.1979).

Commission, by a divided vote, modified the Review Board's decision to authorize freight service over the entire line. This petition for review followed.

Repairs have been made to the westerly portions of the right-of-way between Colora and Chadds Ford Junction, funded from several public and private sources. The easterly segment is still inoperable. A freight service is now being provided by OCTR over the westerly segment.

## II. THE DETERMINATION OF SHIPPER NEED

■ The governing statute provides that a rail carrier may be authorized to operate a line

only if the Commission finds that the present or future public convenience and necessity require or will be enhanced by the construction or acquisition (or both) and operation of the railroad line.

49 U.S.C. § 10901(a). The sine qua non for such a finding is evidence of shipper need, actual or prospective. This application was supported by eleven shippers located along the segment of the line west of Chadds Ford Junction, by the Korman Corporation, a landowner with undeveloped property along the easterly segment, by the Commissioners of Chester County, and by the State of Maryland. The disputed segment, of course, is not located in Maryland. Reviewing the evidentiary submissions, Review Board No. 5 concluded:

■ [T]he OCTR has presented no evidence indicating that there is any need for service on the Chadds Ford Junction to Wawa segment of the line. . . . No shippers have come forward to demand service. The only potential shipper in this segment, the Korman Corporation, is years away from having a facility in need of rail service. According to the [Concord] Township, there are no other industries in the segment that need rail service. There is no economic development planned in the [Concord] Township that can use the OCTR. The OCTR's

response that the existence of the railroad service will attract service is speculative. . . .

■ SEPTA does not know when and if the segment of the line will be rebuilt. SEPTA has no immediate plans to rebuild the two bridges between Concordville and Wawa and restore that segment of the line. OCTR cannot provide rail service until repairs are made. We cannot issue a certificate authorizing operations over this segment until we have more definite information about restoration of service.

. . .

ICC F.D. No. 28334 at 2, 3 (Sept. 19, 1978). In contrast with these findings about the easterly segment, Review Board No. 5 found that "we have financial projections of the line west of Chadds Ford Junction; we have evidence of shippers' need for the service over that segment; and that portion of the line is the only one operable at this time." *Id.* at 3. The Board concluded that it should grant a Certificate for freight service only over the westerly segment. Its reasons are clear. First, the only evidence of shipper need relates to the westerly segment. Second, financial projections for operations over the easterly segment cannot be made because there is no clear indication when, if ever, that segment will be rebuilt.

The Commission majority reversed the Board. As to demonstrating shipper need, it concluded that SEPTA's expressed intention to reconstruct the eastern segment, at some time in the future for commuter passenger service, was sufficient to demonstrate their commitment to funding.[3] Potential passenger service may be assessed as a factor, but there is no evidence supporting a need for mass transit because the Certificate is for freight service. The majority also concluded that OCTR had satisfied the need requirement because a freight service had been operated on the line from 1859 to 1971, and had never been formally abandoned.

---

3. The Commission reasoned that the Board's decision was partly based on the fact that SEP-TA was not necessarily committed to making the line operable.

We review Commission action on applications for Certificates of Public Convenience and Necessity under one or more of the six separate standards for judicial review of the Administrative Procedure Act, 5 U.S.C. § 706(2) (1976).[4] Only three are of possible application here. We can set aside the Commission's action only if it is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, . . ."[5] or "(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, . . ." or "(E) unsupported by substantial evidence . . . ."[6]

■ Contrary to petitioners' contention, the Commission did not act in excess of statutory authority. In this instance, the Commission's decision was made on the same evidence as was submitted under its Modified Procedure to the Board. Moreover, the Commission majority does not, with respect to shipper need, dispute the Board finding that OCTR has presented no evidence indicating any present need for service east of Chadds Ford Junction,[7] and that finding is supportable under the substantial evidence standard. The sole justification for the Commission action is its reliance on the fact that prior to 1971 Penn Central had a Certificate of Convenience and Necessity for the whole branch line, and never completed an abandonment proceeding.

■ We conclude that reliance on the past use of the line—Penn Central's Certificate—as a reason for granting a Certificate to OCTR was arbitrary, capricious, and not in accordance with law. In the first place, the Penn Central reorganization proceedings and those proceedings by the United States Railway Commission pursuant to the Regional Rail Reorganization Act realistically amounted to an authorization of abandonment. The Interstate Commerce Commission cannot parlay its dismissal of an abandonment proceeding for lack of jurisdiction into a finding of continuing shipper need.

■ Secondly, even assuming that Penn Central or a party in privity with it could rely on the old Certificate in order to resume freight service after seven years of inactivity, it does not follow that OCTR, an entirely new carrier which never had any interest in that Certificate, may do so. Finally, even if we were to look at the prior Certificate and service as evidence of shipper need at some time in the past, it certainly is not substantial evidence of shipper need at the time of the OCTR application. There is no evidence of present shipper need east of Chadds Ford Junction and the Commission did not disagree with the Board's conclusion on the speculative nature of any future need of the Korman Corporation. The Commission's issuance of the Certificate for operations east of Chadds Ford Junction in reliance on the old Penn Central Certificate (the past use of the line and the absence of formal abandonment) must be regarded as an arbitrary and capricious action and an error of law. The petition for review must be granted.

4. *See Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 413, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971).

5. *See Bowman Transp. v. Arkansas-Best Freight System,* 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974) (although agency's finding may be supported by substantial evidence, it may also reflect arbitrary and capricious action).

6. *See May Trucking Co. v. United States,* 593 F.2d 1349, 1352 (D.C.Cir. 1979).

7. In its brief to this court, the Commission offers a *post hoc* rationalization that the eleven shippers in the westerly segment supported service over the entire line. We may not rely on such rationalizations, but must instead look to the factual findings and reasoning of the agency set forth in its opinion or order. *See Dry Colors Manufacturers Ass'n v. Department of Labor,* 486 F.2d 98, 104 n.8 (3d Cir. 1973). In any event, the shippers' presentation referred to the service as actually restored which does not include the easterly segment. The brief also refers to one westerly segment shipper who expressed a future interest in shipping grain to Philadelphia. That shipper may obviously do so now through the Colora, Maryland junction with Conrail.

## III. OMISSION OF AN ENVIRONMENTAL IMPACT STATEMENT

■ Our conclusion that the petition for review must be granted because of the absence of substantial evidence of shipper need over the disputed segment of the right-of-way requires that the grant of the Certificate be vacated. This is all the relief petitioners seek. But, since it seems likely that OCTR and SEPTA will make further effort before the Commission to prove shipper need, it is appropriate to address petitioners' alternative contention that an Environmental Impact Statement was required.

■ The National Environmental Policy Act of 1969, 42 U.S.C. §§ 4321–4361 (1976) (NEPA) requires that federal agencies take environmental considerations into account, and that they prepare an Environmental Impact Statement for all "major Federal actions significantly affecting the quality of the human environment . . . ." 42 U.S.C. § 4332(2)(C). It is the responsibility of the federal agency which has jurisdiction over the original matter to determine whether a proposed action falls within this statutory category. The Commission relegates this task to its Section of Energy and Environment. That Section prepares an Environmental Threshold Assessment Survey (TAS) to determine whether an Environmental Impact Statement is required under section 4332(2)(C). In this case, the Section published a TAS in June, 1977 which concluded that the issuance of the Certificate of Public Convenience and Necessity was not a major federal action significantly affecting the human environment.

■ The review of an agency decision to go forward with a major federal action after the agency has prepared and considered an Environmental Impact Statement, requires the court to determine whether all necessary procedures were followed, to consider de novo all relevant questions of law, and to examine the facts to determine whether the decision was arbitrary, capricious, and an abuse of discretion.[8] What the court's role should be in reviewing an agency decision to omit the preparation and consideration of an Environmental Impact Statement, however, has been a matter of dispute among reviewing courts.

Some courts, recognizing that an initial decision to omit the preparation of an Environmental Impact Statement may bypass the direction of NEPA to consider environmental factors "to the fullest extent possible", have concluded that such a decision must be subject to a more searching judicial inquiry than the review of the merits of agency action after preparation of an impact statement.[9] These courts reason that the National Environmental Protection Act is not merely a full disclosure law but one designed to effect substantive changes, and thus the policy of the Act requires that the decision not to prepare an impact statement should be measured by its reasonableness in the circumstances. That judicial standard of review is far less deferential to the agency than the arbitrary and capricious standard of section 706(2)(A) of the Administrative Procedure Act.[10]

The Second and Seventh Circuits, however, have chosen to reject the reasonableness standard and utilize the more traditional abuse of discretion scope of review.[11] This court has reserved decision on the appropriate scope of review of a threshold agency decision not to prepare an impact

---

**8.** See *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

**9.** See *Minnesota Public Int. Research Group v. Butz*, 498 F.2d 1314, 1320 (9th Cir. 1974); *Wyoming Outdoor Coordinating Council v. Butz*, 484 F.2d 1244, 1249 (10th Cir. 1973); *Save Our Ten Acres v. Kreger*, 472 F.2d 463, 466 (5th Cir. 1973).

**10.** See Note, *Threshold Determinations Under Section 102(2)(c) of NEPA: The Case for "Reasonableness" as a Standard for Judicial Review*, 16 Wm. & Mary L.Rev. 107 (1974).

**11.** See *Nucleus of Chicago Homeowners Ass'n v. Lynn*, 524 F.2d 225, 229–30 (7th Cir. 1975), *cert. denied*, 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 734 (1976); *Hanly v. Kleindienst* 471 F.2d 823, 829–30 (2d Cir.), *cert. denied*, 412 U.S. 908, 93 S.Ct. 2290, 36 L.Ed.2d 974 (1972).

statement.[12] The district courts in this circuit tend to apply the higher standard of reasonableness to such threshold determinations.[13] There is much to be said in favor of subjecting these threshold determinations to the higher scrutiny on review. We need not resolve that question in this case, however, for we find that the TAS and the Addendum pass muster under the higher standard.

In *NAACP v. Medical Center, Inc.*, we noted that the statute poses two questions: (1) is the proposed agency action a major federal action, and (2) will its environmental effects be significant. 584 F.2d at 626–27.[14] We assume, and the Commission does not dispute, that granting a railroad a Certificate of Public Convenience and Necessity is a major federal action.[15] Thus, the focus of our attention is upon the significance of the environmental effects. At this point, further refinement is necessary. Environmental effects may take place both by virtue of the operation of a rail service [16] and by virtue of the erection of physical structures necessary for that service. In this instance, the petitioners' complaint is directed primarily to the environmental impact of structures necessary to render the line operable rather than the environmental effects of the actual utilization of the easterly segment for freight service.

Specifically, the petitioners contend that the TAS did not take into account the location of the right-of-way in a flood plain, local zoning ordinances that limit building in that flood plain, the devastation caused in 1971 by railroad bridges which obstructed the runoff of flood waters, and the need, before rail service is restored east of Chadds Ford Junction, to rebuild these same obstructions. The original TAS did not address the flood plain issue. When the petitioners called to the Commission's attention the potential implications of the proposed rail operations on future area flooding, an Addendum was prepared by the Section of Energy and Environment. While acknowledging that the erection of the structures would have environmental impacts, the Section nevertheless concluded that the issuance of a Certificate of Public Convenience and Necessity would have no significant environmental impact on the flood plain. The Addendum points out that the Certificate of Public Convenience and Necessity does not authorize construction in the flood plain. There are, of course, still the remains of a hundred and twenty-year old railroad along the right-of-way. And, most importantly, before washed-out bridges may be replaced, permits must be obtained from other federal, state, and local agencies—in particular, the United States Corps of Engineers.

■ Since the Certificate of Public Convenience and Necessity neither directs nor authorizes the erection of these structures in the flood plain, we agree that the issuance of the Certificate can have no physical environmental impact. Thus, under either standard of scrutiny, the Commission's conclusion that an Environmental Impact Statement was not required is sound.

**12.** *See NAACP v. Medical Center, Inc.*, 584 F.2d 619, 635 n.19 (3d Cir. 1978).

**13.** *See Township of Ridley v. Blanchette*, 421 F.Supp. 435, 445 (E.D.Pa.1976) (citing dictum in *Transcontinental Gas Pipeline Corp. v. Hackensack Meadowlands Development Comm'n*, 464 F.2d 1358, 1367 (3d Cir. 1972), *cert. denied*, 409 U.S. 1118, 93 S.Ct. 909, 34 L.Ed.2d 701 (1973) for reasonableness standard); *Concerned Residents of Buck Hill Falls v. Grant*, 388 F.Supp. 394, 398 (M.D.Pa.1975), *vacated in part on other grounds*, 537 F.2d 29 (3d Cir. 1976); *Borough of Morrisville v. Delaware River Basin Comm'n*, 399 F.Supp. 469, 478 (E.D. Pa.1975); *see* Comment, *Threshold Determination Under the National Environmental Policy Act of 1969*, 5 Rutgers Camden L.J. 380, 383 n.16 (1974). *But see Union Mechling v. United States*, 390 F.Supp. 391, 410 (W.D.Pa.1974) (applying arbitrary, capricious standard).

**14.** *Accord Hanly v. Kleindienst*, 471 F.2d at 830 (applying bifurcated "separate threshold" approach). The regulations, however, recently adopted the "integrated threshold" approach. *See* 49 C.F.R. § 1508.18 (1979).

**15.** *See* Rodgers, *Environmental Law* § 7.6 at 752–53 (1976).

**16.** *See Aberdeen & Rockfish R. Co. v. SCRAP*, 422 U.S. 289, 95 S.Ct. 2336, 45 L.Ed.2d 191 (1975).

## IV.

The petition for review will be granted, the Commission's Decision and Order will be set aside insofar as it grants a Certificate of Public Convenience and Necessity between Chadds Ford Junction and Wawa, and the order of Review Board No. 5 will be reinstated.