SIERRA CLUB et al.,
Plaintiffs-Appellants,

v.

John S. HASSELL, Jr., etc., et al.,
Defendants-Appellees.

No. 80-7565.

United States Court of Appeals,
Fifth Circuit.
Unit B

Feb. 13, 1981.

Larry T. Menefee, Mobile, Ala., Sarah Chasis, Natural Resources Defense Council, Inc., New York City, Frederick S. Middleton, III, Sierra Club Legal Defense Fund, Lee Bishop, Washington, D. C., for plaintiffs-appellants.

William A. Kimbrough, Jr., U. S. Atty., Mobile, Ala., Jerry Jackson, Cleveland Thornton, Lois J. Schiffer, Attys., Dept. of Justice, Lands Div., Appellate Sec., Washington, D. C., for John S. Hassell, Jr., et al.

Charles A. Graddick, Atty. Gen., Larry U. Sims, Champ Lyons, Jr., Sp. Asst. Attys. Gen., Mobile, Ala., for Fob James, Governor of Ala. and Rex Rainer, Highway Director of Ala.

Larry U. Sims, Champ Lyons, Jr., Mobile, Ala., for intervenor Dauphin Island Property Owners Assn. et al.

Before SIMPSON, RONEY and THOMAS A. CLARK, Circuit Judges.

RONEY, Circuit Judge:

In this action appellants seek to enjoin construction of a federally-funded bridge which will connect Dauphin Island to the Alabama mainland. The original bridge was destroyed in 1979 by Hurricane Frederic. The district court denied injunctive relief, holding that appellees complied with the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 *et seq.* (1970) (NEPA), and with Executive Orders 11988 and 11990. We affirm.

Dauphin Island is a barrier island approximately four miles off the coast of Alabama. Prior to the hurricane, the island was connected to the mainland by the Dauphin Island Bridge, which was constructed in 1956 solely with state funds. Dauphin Island is partially developed, with a population of several hundred permanent and part-time residents and a number of commercial and military establishments. It also contains substantial wetlands, bird and wildlife habitats, and sites of archaeological importance.

On September 12, 1979, Hurricane Frederic struck the Alabama coast. It destroyed the Dauphin Island Bridge and inflicted severe damage to many homes and facilities on the island. The President of the United States visited the area immediately after the hurricane and declared it a major disaster area. Several days later, the Alabama State Highway Department requested federal aid to restore damaged roads and bridges.

During the remainder of September, several meetings were held among various federal and state agencies, including the Federal Highway Administration (FHWA), the Coast Guard, the Army Corps of Engineers, and the Alabama State Highway Department, to discuss reconstruction of the Dauphin Island Bridge as well as several possible alternative measures. An interagency committee of state and federal environmental agencies was established to offer advice on environmental matters. By the end of the month, a decision was reached to rebuild the bridge. On January 3, 1980, the Coast Guard issued the construction permit and the FHWA formally authorized funds.

Appellants, the Sierra Club and the Natural Resources Defense Council, private environmental groups, filed this action on March 24 against several of the federal and state agencies involved. Standing to bring this action has not been questioned by the defendants on appeal. The principal defendants, appellees here, are the Federal Highway Administration and the Coast Guard. On appeal, as in the district court, appellants challenge the failure of the FHWA and the Coast Guard to prepare an environmental impact statement, which they allege is required by NEPA. They also contend the agencies failed to comply with Executive Orders 11988 and 11990, which impose, respectively, special procedural requirements for development in floodplains and wetlands.

A. *Preparation of an Environmental Impact Statement Under NEPA*

■ NEPA requires federal agencies to prepare an environmental impact statement for all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C.A. § 4332(2)(C). An impact statement is not required for a nonmajor action or a major action which does not have a significant impact on the environment. The Federal Highway Administration determined the project to rebuild the Dauphin Island Bridge was not a "major action" as defined by NEPA and the implementing regulations, and thus did not require an impact statement. The Coast Guard concurred.

■ These agency determinations are tested in court under a "reasonableness" standard. A reviewing court is to review the administrative records as well as other evidence to determine whether the agencies adequately considered the values set forth in NEPA and the potential environmental effects of the project before reaching a decision on whether an environmental impact statement was necessary. If the agencies engaged in this analysis and reasonably concluded on the basis of their findings that

an impact statement was not required, their determinations will be upheld. *See, e. g., Save the Bay, Inc. v. U.S. Corps of Engineers,* 610 F.2d 322 (5th Cir. 1980); *Save Our Ten Acres v. Kreger,* 472 F.2d 463 (5th Cir. 1973).

■ Appellants contend the decision of the FHWA and the Coast Guard not to prepare an environmental impact statement was unreasonable. They argue the agencies failed to engage in an adequate analysis of potential adverse environmental effects of the new bridge, possible alternatives to reconstruction, and mitigation measures. We agree with the district court, however, that the agencies sufficiently considered these factors. The record, which contains voluminous administrative records, depositions and affidavits, and a transcript of the testimony before the district court, reveals extensive interagency discussion of environmental matters before the decision to rebuild the bridge was reached. The agencies determined that to reconstruct the bridge on essentially the same alignment as the old bridge would not measurably alter the environment of Dauphin Island. In fact, a proposal to build the bridge in a different location was rejected because of the potential harm to oyster beds which might have been caused by the dredging.

The agencies also considered in detail alternatives to reconstruction, including taking no action to rebuild the bridge, air service, and permanent ferry service. Each was rejected for a variety of reasons. For example, ferry service, the alternative most strongly proposed by appellants, was rejected not only as prohibitively expensive and impractical, but also for its potential adverse environmental effects.

The mitigation measures which appellants argue might have been taken include restrictions on the island's use and development. Dauphin Island, however, is presently protected by laws which restrict its development and use, including permit requirements for various types of construction, regulations on the use of fish habitats surrounding the island, and the prohibition of any development on sand dunes. At least ten government agencies share responsibility for overseeing these laws. Appellants have failed to establish why this regulatory scheme is insufficient to protect against adverse environmental effects resulting from increased development or otherwise.

■ Appellants also contend the agencies violated their own regulations in determining that an environmental impact statement was not necessary. They argue that the regulations implementing NEPA, relied upon by the FHWA and the Coast Guard, call for the preparation of an environmental impact statement for the construction of a replacement bridge.

A major federal action, which requires an environmental impact statement under NEPA, is defined in the FHWA regulations as an action "likely to precipitate significant foreseeable *alterations*" in the environment. 23 C.F.R. § 771.9(d) (emphasis supplied). Examples given in the regulations clearly contemplate as major actions highway projects which provide *new* or *substantially improved* access to an area which may have a significant environmental effect. *Id.* An environmental impact statement is not required for a "non-major action." Although this term is not specifically defined in the regulations, examples of non-major actions are provided, and they encompass reconstruction or repair projects as well as minor projects. 23 C.F.R. § 771.9(e). The FHWA had classified the project to rebuild the bridge as a non-major action.

The implementing regulations followed by the Coast Guard also require environmental impact statements only for projects significantly altering the environment. 40 C.F.R. § 1500 *et seq.* (1978). These regulations, issued by the Council on Environmental Quality, state that an environmental impact statement is not required for a "categorical exclusion," which is similar to a "non-major" project. 40 C.F.R. §§ 1508.4; 1508.8. After conducting its own environmental investigation, the Coast Guard agreed with the FHWA that an impact statement was not necessary and classified the project as a categorical exclusion.

■ The duty to prepare an environmental impact statement is thus triggered by the regulations when there is to be a change in the status quo. *See, e. g., Burbank Anti-Noise Group v. Goldschmidt,* 623 F.2d 115, 116 (9th Cir. 1980); *Committee for Auto Responsibility v. Solomon,* 603 F.2d 992, 1002–03 (D.C.Cir.1979); *Cobble Hill Ass'n v. Adams,* 470 F.Supp. 1077 (E.D.N.Y. 1979). Appellants suggest that for the purpose of determining an alteration in the environment, the "status quo" is Dauphin Island after the hurricane *without* a bridge. Therefore, they argue, the rebuilding of the bridge alters that environment.

Although the issue apparently has not been decided in this Circuit and is not without some difficulty, we hold it was not unreasonable for the agencies to conclude that the status of the environment to be considered was that with the bridge in place, prior to its destruction. The reconstruction project will only restore an environmental situation that had existed for twenty-four years. *City & County of San Francisco v. United States,* 615 F.2d 498 (9th Cir. 1980), is analogous. In that case, the Ninth Circuit upheld the Navy's decision not to prepare an environmental impact statement for its lease of an existing shipyard to a private company. The Court noted that the lease was merely a "phase in an essentially continuous activity," even though the shipyard had been inactive for two years prior to the lease. *Id.* at 501.

Under these principles, it appears that the new bridge does not significantly alter the status quo. The bridge, though of an improved design, is essentially on the same alignment as the previous two-lane bridge and is also only two lane. It is slightly wider, in conformity with present federal standards. Its only significant difference is that, unlike the old bridge, it does not have a drawbridge but instead contains a high arch to permit the passage of vessels. Appellants' evidence that the absence of a drawbridge will result in heavier traffic to the island and lead to increased development is speculative as it relates to a change in environment.

The design of the new bridge may provide both environmental and safety benefits. Its ⌐verage height is greater than the old bridge, making it less susceptible to hurricane loss. The piers are fewer and farther apart, which may serve to reduce the number of accidents and the resulting debris. It may also be possible to recover wetlands which were previously covered by the causeway portion of the old bridge.

Thus, contrary to appellants' argument, the agencies appear to have complied with their own regulations. The record, then, supports the decision that the FHWA and the Coast Guard, acting in compliance with NEPA and the applicable regulations thereunder, reasonably concluded the project to reconstruct the Dauphin Island Bridge did not require the preparation of an environmental impact statement. The district court did not err in denying injunctive relief on the basis of the NEPA statute.

Our decision shall not be taken to indicate that it would have been unreasonable or undesirable for the agencies to have classified this project as a "major action." Indeed, a project requiring the expenditure of thirty million dollars and a construction period of two years would at first glance appear to be a major action. After such a classification, the agencies might then have filed a report concluding the project, though major, would not require an environmental impact statement because it would not have significant effects on the environment. 23 C.F.R. § 771.11; 40 C.F.R. § 1508.13. Alternatively, the agencies might have chosen to prepare an impact statement pursuant to expedited procedures set forth in the regulations for emergency situations. 23 C.F.R. § 771.16; 40 C.F.R. § 1506.11. Yet, in light of the particular facts of this case, including the pressing need for a bridge and the considerable attention given to the environmental consequences, it cannot be said the agencies violated either the spirit or the letter of NEPA and the implementing regulations.

This decision upholding the agencies' determinations not to prepare an impact statement for this project may have little

precedential significance beyond the disposition of this case. New regulations adopted by the FHWA and the Coast Guard apparently provide that even a replacement bridge to a barrier island is a major action, so that an impact statement or at least a written report finding no significant environmental effects might have to be prepared, a point we do not decide. These regulations, however, were not in force in October 1979, when the FHWA and the Coast Guard determined that an environmental impact statement would not be required to rebuild the bridge.

B. *Compliance with Executive Orders 11988 and 11990*

Executive Order 11988, entitled "Floodplain Management," seeks to minimize actions by federal agencies which may adversely affect floodplains. The Order was issued by the President of the United States on May 24, 1977. The Department of Transportation has enacted implementing regulations which are applicable to both the FHWA and the Coast Guard, *see* 44 Fed. Reg. 24678 *et seq.* (1979), and the FHWA has promulgated additional regulations, *see* 44 Fed.Reg. 67578 *et seq.* (1979).

Executive Order 11990, issued on the same day, provides similar protection to minimize development in wetlands. Regulations implementing this Order have also been adopted by the Department of Transportation. *See* 43 Fed.Reg. 45285 *et seq.* (1978).

These Executive Orders direct federal agencies to evaluate the effects of proposed actions on floodplains and wetlands, and to avoid taking action affecting such areas unless there are no "practicable alternatives." They also require agencies to provide an opportunity to the public and interested agencies to comment on proposed projects.

█ We do not here decide whether these Executive Orders permit enforcement through a private cause of action. *Compare Aluli v. Brown*, 437 F.Supp. 602 (D.Hawaii 1977), *rev'd in part*, 602 F.2d 876 (9th Cir. 1979) (private cause of action under

Executive Order 11593), *with Farkas v. Texas Instrument, Inc.*, 375 F.2d 629 (5th Cir. 1967) (no cause of action under Executive Order 10925). Even if such actions are authorized, the district court properly found the FHWA and the Coast Guard have substantially complied with these Orders. The agencies fully evaluated the effects of the proposed rebuilding of the bridge on the island's wetlands and floodplain values. Moreover, as shown above, alternatives to reconstruction were considered and rejected for sound reasons.

█ Because the agencies concluded the project had no significant impact on wetlands and floodplain values, written findings were not required. 43 Fed.Reg. 45286–87; 44 Fed.Reg. 24680–81. Nevertheless, the preparation of a separate report detailing the findings of the agencies would have facilitated review by interested parties and by this Court. *See National Wildlife Federation v. Adams*, 629 F.2d 587 (9th Cir. 1980). In the present case, however, the record is adequate to determine the agencies complied with the type of analysis required by the Executive Orders.

█ Although the agencies did not provide for public review of the project devoted solely to the consideration of its impact on wetlands and floodplain values, the public was given the opportunity to express views on these aspects. On October 26, the Coast Guard issued a public notice soliciting comments on the permit application to rebuild the bridge, including its impact on the "total environment" of Dauphin Island. Recipients of this notice included local Alabama newspapers and a member of the Sierra Club. In response, the Coast Guard received favorable comments from various state agencies and others. On December 3, the Army Corps of Engineers issued public notice of its dredging permit, which also invited comments on the environmental effects of this action. It stated further that interested parties could request a public hearing. At an early stage, then, appellants as well as others were provided the opportunity to voice their objections, if any, to the proposed actions.

The district court's denial of injunctive relief and dismissal of the complaint is AFFIRMED.