Summersgill **DARDAR**, et al.

v.

**LAFOURCHE REALTY CO., INC.**, et al.

**Civ. A. No. 85–1015.**

United States District Court.
E.D. Louisiana.

July 29, 1986.

Michael Osborne, New Orleans, La., for plaintiffs.

William R. Pitts, Liskow & Lewis, New Orleans, La., for Lafourche Realty.

Kai David Midboe, William J. Guste, Jr., David C. Kimmel, State of La. Atty. General's Office, Baton Rouge, La., for State of La.

Ruth M. Force, U.S. Attys. Office, New Orleans, La., Carl Strass, Environmental Defense Section, Land & Natural Resources Div., Washington, D.C., for Corps.

## ORDER AND REASONS

PATRICK E. CARR, District Judge.

The Corps' Motions to Dismiss or for Summary Judgment as to Private Plaintiffs and as to the State of Louisiana, came on for hearing on Wednesday, May 21, 1986. After considering the Corps' motions, the memoranda of the parties, the record, the administrative records, and the law applicable to this case, the Court has determined that the Corps' motions should be denied in part and granted in part for the following reasons.

In Lafourche Parish Wetlands Permit 506, the U.S. Army Corps of Engineers ("the Corps") authorized Lafourche Realty Company, Inc. ("Lafourche Realty") to install and maintain nine barrier fences and three gated barrier fences to prevent trespassing in eleven unnamed canals in Lafourche Parish, Louisiana, approximately 3.6 miles northeast of Leeville, Louisiana.[1] Proceeding under Permit 506, Lafourche Realty constructed access control gates which now are used to forbid entry to the Tidewater Canal by anyone not authorized by Lafourche Realty. In addition to the building of gates and fences, Lafourche Realty also utilizes armed guards, patrol boats, levees, assessments of tolls, and threats of criminal prosecution to prevent

individual plaintiffs and other members of the public from using the canal.[2]

The Corps also issued Permits 517 and 547 granting permission for Lafourche Realty to dredge and maintain existing canals, to install and maintain new levees, to recap and maintain existing levees, to install and maintain new water control structures, to maintain existing water control structures, and to install and maintain five shell dams in Bayou Ferblanc, Tidewater Canal, as part of a Marsh Management Program.[3] The program was designed to stabilize the marshes, thus reducing land loss and erosion and to improve fish and wildlife habitats.[4]

Individual plaintiffs are commercial fishermen who have fished for many years in the navigable waters of Lafourche Parish. They allege that in 1812 the Tidewater Canal and Wetland System, consisting of approximately 13,000 acres, contained various navigable waterways including Mink Bayou, Bayou Raphael, Bayou Camille, Lac des L'Isle, Bayou Ferblanc and several other unnamed trenasses, boat channels, lakes, bayous and ponds. According to the individual plaintiffs, these waterways are and were subject to the ebb and flow of the tide; are and were navigable waters of the U.S., the beds, bottoms and waters of which are and were owned by the State; and were used for navigation by fishermen, trappers, hunters, timber producers and others.[5] Individual plaintiffs further contend that when Lafourche Realty began building the Tidewater Canal System in 1947, it obstructed and replaced natural navigable waterways and from 1947 to 1984 allowed the public to use the newly constructed system for access to other areas.[6] Upon construction of the fences and gates, individual plaintiffs are no longer allowed to use the Tidewater Canal System.

1. Permit 506 was issued pursuant to Section 10 of the River and Harbor Act of 1899, 33 U.S.C. § 403.

2. See Answer of Lafourche Realty, Sixth Defense, ¶ 1.

3. Permits 517 and 547 were issued pursuant to Section 10 of the River and Harbor Act of 1899,

33 U.S.C. § 403, and Section 404 of the Clean Water Act, 33 U.S.C. 1344.

4. See letter of Coastal Environments, Inc. dated November 14, 1983.

5. See Complaint of individual plaintiffs, ¶ 10.

6. See Complaint of individual plaintiffs, ¶ 13.

They therefore, seek to have Permit 506 declared void and to have a judicial declaration that the areas affected by the permit are public navigable waterways.

Lafourche Realty alleges that it acquired the property in question on January 27, 1921, and has continuously maintained it as private property.[7] In 1948 a mineral lessee dredged a 6-mile canal from Bayou Lafourche in order to explore for oil and gas. Lafourche Realty asserts that prior to the dredging of this canal, there were no navigable waterways into its property; that the Tidewater Canal did not intersect any other waterways; and that the canal was a dead end until sometime between 1965 and 1972 when an unknown and unauthorized person used hand tools to connect the canal to Bay Vasier. Lafourche Realty denies that the general public was ever allowed to use the canal and contends that if individual plaintiffs did, in fact, enter its property, they did so as trespassers.[8]

The State of Louisiana intervened to assert ownership of fish and wildlife within the program area as well as natural navigable waterways allegedly obstructed when the Tidewater Canal System was built.[9] The State also seeks to have Permits 506, 517 and 547 declared null because of the Corps' failure to prepare an Environmental Impact Statement ("EIS").

Before granting Permit 506 the Corps conducted an Environmental Assessment ("EA") but did not prepare an EIS. In the EA the Corps determined that the proposed fences and gates would have a minor adverse effect on recreation and recreational navigation; the effect on commercial navigation was listed as "not applicable."

Objections were lodged by the Lafourche Parish Council, the South Lafourche Levee District and the Greater Lafourche Port Commission on the basis that the project would block access to navigable waters by local fishermen. The Corps also received "numerous letters of objection" from local fishermen who used the canals to reach fishing and shrimping grounds in Little Lake.[10] Despite these objections no public hearing was held and the Corps concluded in its Statement of Findings that:

(1) The applicant owns all of the man-made canals which he proposes to close.

(2) The applicant has unsuccessfully tried to discourage trespassers by posting the canals.

(3) Heavy boat traffic in the canals is causing severe erosion of the applicant's property.

(4) Limiting access to the canals will inconvenience local fishermen who will have to use longer routes or pay a contract fee to the applicant for use of these private waterways.

(5) Trespassers have vandalized camps and structures on the applicant's property and poached on his grounds.

(6) There are other access routes to public fishing grounds.

An EA was also prepared for Permits 517 and 547. It reflects overall beneficial environmental effects. In its Findings of Fact the Corps concluded that an EIS was not necessary because environmental impacts were minor. It further concluded that the discharge of dredged material was the "least environmentally damaging practical alternative."

As finally granted Permits 506, 517 and 547 contain the following general conditions:

1.i That this permit does not convey any property rights, either in real estate or materials, or any exclusive privileges; and that it does not authorize any injury to property or invasion of rights or any infringement of Federal, State, or local laws or regulations.

1.1. That in issuing this permit, the Government has relied on the information and data which the permittee has provided in connection with his permit

---

7. See Answer of Lafourche Realty, Sixth Defense, ¶ 2.

8. See Answer of Lafourche Realty, Sixth Defense, ¶ 5.

9. See Complaint of State, ¶ 2 and ¶ 4.

10. Statement of Findings dated December 21, 1983, p. 2.

application. If, subsequent to the issuance of this permit, such information and data prove to be materially false, materially incomplete or inaccurate, this permit may be modified, suspended or revoked in whole or in part, and/or the Government may, in addition, institute appropriate legal proceedings.

1.s. That there shall be no unreasonable interference with navigation by the existence or use of the activity authorized herein.

A special condition of each permit is "[t]hat no attempt shall be made by the permittee to prevent the full and free use by the public of all navigable waters at or adjacent to the activity authorized by this permit."

The Corps raises several issues in its motions to dismiss. However, the threshold question is what standard of judicial review applies to the Corps' issuance of the permits. The Court will first address the applicable standard under the National Environmental Policy Act ("NEPA").

■ NEPA requires a federal agency contemplating a "major Federal Action" which "significantly" affects the quality of the human environment, to prepare an EIS prior to commencement of the project. 42 U.S.C. § 4321, et seq.; 40 C.F.R. §§ 1500.3, 1501.3, 1501.4, 1502.3. "Major Federal Action" includes projects such as the ones in the case at bar where federal agency approval through permit is required. 40 C.F.R. § 1508.18(4). "Significantly" as used in the regulations, requires the agency to consider both the context of the action and the intensity of the impacts, including cumulative impacts. 40 C.F.R. § 1508.27.

Not all major federal actions require the preparation of a complete EIS. An EIS need not be prepared if the project is found not to significantly affect the quality of the human environment. 40 C.F.R. § 1501.4. If on the basis of an EA, the agency determines not to prepare an EIS, it must issue a document showing a "finding of no sig-

nificant impact". 40 C.F.R. §§ 1501.4, 1508.13.[11]

Under the regulations, the Corps must perform a "public interest review" to determine if a proposal would have a "significant" effect on the quality of the human environment. Included in this review is a consideration of alternatives to the proposed activity and the cumulative impact of the proposed activity on the environment. 33 C.F.R. § 320.4(a).

The case law in this Circuit has established that the role of the judiciary in reviewing agency action is not to substitute the Court's judgment for that of the Agency. *Fritiofson v. Alexander,* 772 F.2d 1225, 1238 (5th Cir.1985). "The standard of judicial review is whether the agency decision not to develop an impact statement is reasonable and made objectively and made in good faith on a reviewable environmental record." *Louisiana v. Lee,* 758 F.2d 1081, 1083 (5th Cir.1985) [quoting *Save Our Wetlands, Inc. v. Sands,* 711 F.2d 634, 644 (5th Cir.1983)].

Under this standard the court must determine whether the plaintiff has alleged facts which, if true, show that the recommended project would materially degrade any aspect of environmental quality.

\*     \*     \*     \*     \*     \*

[If the plaintiff] raise[s] substantial environmental issues concerning the proposed recommended project ..., the court should proceed to examine and weigh the evidence of both the plaintiff and the agency to determine whether the agency reasonably concluded that the particular project would have no effects which would significantly degrade our environmental quality ... If the court concludes that no environmental factor would be significantly degraded by the project, [the agency's] determination not to file the impact statement should be upheld. On the other hand, if the court finds that the project may cause a significant degradation of some human environmental factor (even though other en-

---

**11.** The issuance of permits is further regulated by 33 C.F.R. § 320, *et seq.* Proposals involving the discharge of dredged or fill material are further regulated by 40 C.F.R. § 230.10.

vironmental factors are affected beneficially or not at all), the court should require the filing of an impact statement or grant [the plaintiff] such other equitable relief as it deems appropriate. (Emphasis deleted).

*Citizen Advocates for Responsible Expansion v. Dole,* 770 F.2d 423, 432 (5th Cir. 1985) [quoting, *Save Our Ten Acres v. Kreger,* 472 F.2d 463, 466 and 467 (5th Cir.1973) ].

■ As clearly explained in *Dole,* supra, "the plaintiff has the initial burden of alleging facts that show a project would affect significantly some human environmental factor." 770 F.2d at 432. Only if the plaintiff meets this burden and the Court finds that the alleged facts are not patently incorrect or untrue does the case proceed. The Court then receives the evidence of the parties.

■ A review of the complaints in the case at bar indicates that neither the individual plaintiffs nor the State have sustained the requisite burden. Individual plaintiffs do not even challenge the Corps' decision not to file an EIS before issuing Permit 506. Their complaint deals only with the blockage of commercial fishing navigation routes. While economic and social factors should be included in an EIS when they are interrelated with natural or physical environmental effects, such factors "are not intended by themselves to require preparation of an [EIS]". 40 C.F.R. § 1508.14.

■ The State's complaint, on the other hand, alleges that the Marsh Management Program (Permits 506, 517 and 547) "will have a significant adverse impact on the quality of the human environment." [12] It does not allege *facts* in support of that sweeping and conclusory statement as required by *Dole,* supra.

■ Since the individual plaintiffs and the State have failed to establish even the threshold showing of a NEPA challenge, the standard of review to be applied by this Court is more deferential than the "reason-

ableness" test enunciated above. The Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.,* provides that a court may set aside agency findings, conclusions, and actions that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or that fail to meet statutory, procedural or constitutional requirements. 5 U.S.C. § 706(2)(A), (B), (C), (D). A final agency decision is entitled to a presumption of regularity and the court may not simply substitute its judgment for that of the agency. *Avoyelles Sportsmen's League, Inc. v. Marsh,* 715 F.2d 897 (5th Cir.1983); *Louisiana Wildlife Federation v. York,* 761 F.2d 1044 (5th Cir.1985). Where an agency's decision is based on an administrative record, the decision should be viewed in light of that record. If the decision cannot be sustained on the basis of the administrative record, the matter should be remanded to the agency for further consideration. *Avoyelles,* supra. The essential function of judicial review under this standard is to ensure that the agency engaged in "reasoned decision-making." *United States v. Garner,* 767 F.2d 104 (5th Cir.1985).

However, the court may conduct a *de novo* review if the agency's decision was "unwarranted by the facts." 5 U.S.C. § 706(2)(F). "[S]uch de novo review is authorized when the action is adjudicatory in nature and the agency fact finding procedures are inadequate." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

Permit 506 was issued on the premise that the canals were built on private, not public land, and did not replace any other known public water navigation route. The Corps' conclusion that Lafourche Realty owned all of the artificial canals it proposed to close is amply supported by the administrative record. Before reaching this conclusion, the Corps contacted the State for its position on the ownership of the canals

---

**12.** See Complaint of State, ¶ 15. ¶ 4 of the Complaint alleges specific environmental effects of the dredging and constructing of the Tidewater

Canal System. However, those activities are not the subject of the permits in question.

in question. The State, which now asserts ownership of the water bottoms, objected to only three of the proposed sites.[13] As a result of this objection Lafourche Realty dropped those three sites from its application pending determination of ownership.

The issue of private ownership is not, however, conclusive in the determination of whether the public has the right to use a waterway. In *Vaughn v. Vermilion*, 444 U.S. 206, 100 S.Ct. 399, 62 L.Ed.2d 365 (1979) the Court held that if a private citizen builds an artificial navigable waterway on private property with private funds and that artificial waterway ultimately joins other navigable waterways, the artificial waterways do not thereby become open to a use by all citizens of the United States. However, the Court went on to note that if the artificial waterway is created in part by means of diversion or destruction of a pre-existing natural navigable waterway, the artificial waterway becomes part of the navigable waterways of the U.S. subject to the use of all citizens. This is the critical issue in the case at bar.

The administrative record indicates that the Corps considered the issue of whether the public had a right to use the "private" canals, including whether a *Vaughn v. Vermillion* problem existed. In a memo to the file the Corps explained:

> Under certain circumstance, the general public does have rights to travel private canals. In our recent dealings with the State Land Office on this matter they sent the district "Opinion No. 81–873" dated 13 August 1981 on a similar matter. We have discussed this "opinion" with the applicant, our Office of Counsel, and the State Land Office and are convinced the public has not acquired by prescription a right of passage on these canals.

The *Vaughn v. Vermillion* issue, so critical in the instant case, was specifically addressed in Opinion No. 81–873, authored by the office of the State's Attorney General.

However, the administrative record is devoid of evidence that the Corps researched the *facts* to support its conclusion. There is no suggestion that historical, geographical, or topigraphical data were compiled or studied to determine whether the Tidewater System obstructed or diverted natural navigable waterways. Should it be determined that the Tidewater System did, in fact, obstruct natural navigable routes, the Corps clearly went beyond its authority in permitting the blockage of the canals. *Overton Park*, supra 91 S.Ct. at p. 823.

Because the Court concludes that the action of the Corps in determining that the Tidewater Canal System is not subject to a right of public use is adjudicatory in nature and that the Corps' fact finding procedures were inadequate, the Corps' motions are denied insofar as they concern Permit 506.

The issuance of Permits 517 and 547 is supported by the administrative record which is filled with positive responses to the proposed marsh management program. Detailed studies were provided by Lafourche Realty on the effects of the program and how it would be operated and monitored. The Corps' actions regarding these permits are clearly not arbitrary and capricious; therefore, the Corps' motions are granted insofar as Permits 517 and 547 are concerned.

---

**13.** See letter dated July 28, 1983, by Bobby M. Freyou, Chief of Title & Records for the Department of Natural Resources, State of Louisiana.