**STATE OF TEXAS, Plaintiff-Appellant,**

v.

**U.S. FOREST SERVICE, et al., Defendants-Appellees.**

No. 86–2951.

United States Court of Appeals, Fifth Circuit.

Nov. 25, 1986.

Jim Mattox, Atty. Gen., Renea Hicks, Asst. Atty. Gen., Austin, Tex., for plaintiff-appellant.

Henry K. Oncken, U.S. Atty., Frank A. Conforti, Asst. U.S. Atty., Houston, Tex., for defendants-appellees.

Before POLITZ, WILLIAMS and JONES, Circuit Judges.

PER CURIAM:

The State of Texas moved in federal district court for a temporary restraining order to stop the United States Forest Service from carrying out a plan of clear cutting an area of the Sam Houston National Forest, destroying the wood, burning off the ground, and then planting seedlings to reforest the area. The district court on November 18, 1986, denied a temporary restraining order. On November 20, this Court granted a stay on motion of the State of Texas against the Forest Service until further order of the Court. The purpose of the stay was to give the Court time to consider the factors involved in the motion for a stay pending appeal of the temporary restraining order. After full consideration of the contentions of the State of Texas, we have determined that the stay against the actions of the United States Forest Service requested by the State of

Texas cannot be justified. IT IS ORDERED that the stay issued November 20, 1986, pending appeal be terminated.

The well established criteria for granting a stay pending appeal are:

(1) Whether the movant has made a showing of likelihood of success on the merits,

(2) Whether the movant has made a showing of irreparable injury if the stay is not granted,

(3) Whether the granting of the stay would substantially harm the other parties, and

(4) Whether the granting of the stay would serve the public interest.

*Ruiz v. Estelle,* 650 F.2d 555, 565 (5th Cir.1981), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983). The party who seeks a stay bears the burden of establishing these prerequisites. *Drummond v. Fulton County Dep't. of Family & Children's Servs.,* 532 F.2d 1001, 1002 (5th Cir.1976). In applying these criteria the State has asserted that this is an atypical case which justifies consideration of the interpretative gloss placed upon these four criteria in *Ruiz* to the effect that the movant need not *"always* show a 'probability' of success on the merits" so long as a showing has been made of a substantial case on the merits "when a serious legal question is involved and ... *the balance of the equities weighs heavily in favor of granting the stay."* 650 F.2d at 565 (emphasis added).

In applying the criteria for a stay it is unavoidable that the merits of the claim being made by the movant be evaluated to the extent necessary to determine whether the criteria have been met. A consideration of the facts, therefore, must be undertaken to the requisite extent for that purpose.

The State has undertaken to restrain a United States Forestry Service action with respect to 2,304 acres of the so-called Four Notch Forest of approximately 6,830 acres which in turn is part of the Sam Houston National Forest consisting of 158,654.88

acres in East Texas. The Forest Service plan is to clear completely the 2,304 acres at issue of all timber and underbrush. The cut timber, the fallen timber, and the underbrush are to be destroyed by the use of a crusher, and the land is to be burned off in a controlled burn to get rid of all of the wood and underbrush. Then something over 1,300,000 pine seedlings are to be planted for reforestation.

The reasons for this action by the Forest Service are set out in its Environmental Assessment (EA) taken under the National Environmental Policy Act, 42 U.S.C. § 4321 et seq. (NEPA). The document reveals that this area was heavily attacked with the southern pine beetle which resulted in the destruction of a number of the trees. In addition, logging operations have left a great deal of logging slash and logging debris in the area. The Forest Service determined that the best of the alternatives considered to clear the area of the undesirable deadwood and underbrush was to make a clean cut, a controlled burn, and to start over again with reforestation.

The contention by the State of Texas is narrow. Texas properly disavows any attempt to tell the U.S. Forest Service how it should manage the forest. It makes only the narrow claim that under the provisions of the NEPA an EA was inadequate to fulfill the statutory requirements and that the statute requires that a full Environmental Impact Statement (EIS) be prepared to justify these activities. We must decide whether it is likely that the State of Texas can prevail on this contention that the Forest Service is violating the law by engaging in this forest management activity without preparing an EIS for it.

A full and thorough Environmental Impact Statement was prepared for and is in effect for the entire Sam Houston National Forest. The State contends that another EIS must be prepared for the action proposed in this portion of the Four Notch area which is approximately 1½% of the total acreage in the Sam Houston Forest.

The National Environmental Policy Act requires that an EIS be prepared when a federal agency is undertaking a "major Federal action [ ] significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). We conclude that the State has not made the requisite showing of the likelihood of prevailing on its claim that an EIS is requisite before this Forest Service action can be taken.

The EA issued by the U.S. Forest Service for the Four Notch area determined that the proposed activities of the Service would not "significantly affect" the quality of the human environment. The EA contemplates a program of forest management, as provided for in the "Final Environmental Impact Statement and Land Management Plan—Sam Houston National Forest—Texas" (the 1978 Plan for which the EIS was prepared). The 1978 Plan is a comprehensive document containing a ten-year management plan for the entire Sam Houston National Forest. If this Court were to require the Forest Service to prepare a site-specific EIS in this case, then it is likely that the Forest Service would have to prepare an EIS any time any action was taken to preserve or improve the condition of the National Forests. This would stretch beyond its outer limits the protective provisions of the National Environmental Policy Act, 42 U.S.C. §§ 4321–4347, which operates to insure that a federal agency consider at least at some level the environmental effects of contemplated action. The Forest Service has done so in this case through its EA.

We are not unsympathetic to the concerns of the State of Texas. When the situation has so warranted, this Court has required the Forest Service and other agencies to prepare the requisite EIS in the past. *See Citizen Advocates for Responsible Expansion, Inc. v. Dole*, 770 F.2d 423 (5th Cir.1985); *Louisiana v. Lee*, 758 F.2d 1081 (5th Cir.1985). Other courts have encountered similar problems and have reached the same conclusions. *See Foundation for North American Wild Sheep v. United States Dept. of Agriculture*, 681 F.2d 1172 (9th Cir.1982); *National Wildlife Service v. United States Forest Ser-*

*vice,* 592 F.Supp. 931 (D.Ore.1984). These decisions, however, center upon situations in which the main focus of the proposed activity was something other than pure management of the natural resource. The common factor in these cases is the introduction of a "foreign" element into the natural environment. *Lee* concerned shell dredging in Louisiana coastal waters, not just improvement of navigation, *Foundation for North American Wild Sheep* involved the reconstruction and continued operation of a road in an area populated by bighorn sheep, and *National Wildlife Foundation* concerned a massive logging operation in a salmon-spawning region. In contrast, the sole motivation behind the Four Notch project is improving an endangered area of a National Forest.

The Forest Service contemplates that without any action "the entire area [of Four Notch] will fast become a choked conglomerate of unmerchantable hardwood brush." The EA indicates that over one-half of the acreage was adversely affected by an infestation of southern pine beetles. The proposed plan of removal and regeneration will result in at least 600 new pine trees being planted for every acre cleared by the Forest Service. Also, special consideration has been given to the unique nature of the Four Notch area, including the existence of nine colonies of red-cockaded woodpeckers, a federally-listed endangered species. All of the trees harbouring these colonies have been identified by the Forest Service and will be protected in the management program.

In view of these considerations we must conclude that the State has not established adequate grounds for a stay of this forest management project. It is true that some aged and healthy hardwood trees will be cut down. But there have been logging operations in the past leaving tree stumps and debris throughout the area. In addition, the State makes no showing that the relatively small number of hardwood trees carries the burden of establishing that this is a forest area to be preserved as it now is as against the widespread ravages of the pine beetle and fallen pine trees. There is no showing that the Forest Service's motive is anything other than the rehabilitation of the area to an effective pine forest. Thus, while we can conclude that there is "irreparable injury" in the short term, we cannot conclude that there is "irreparable injury" over the long term in the overall picture of forest management. Further, the Forest Service has concluded in its EA that the lack of action will lead to the "choked conglomerate" which would make it impossible for it to meet future timber requirements. It is hard to conclude that the stay would serve the public interest when the purpose of the reforestation is to improve the forest rather than replace it with buildings, industry, highways, or the like. We must conclude that the State has not made a showing of likelihood of success on the merits or a substantial case in which the balance of the equities weighs heavily in favor of a stay.

There remains one final matter. The usual rule is that there is no right to appeal the denial of a temporary restraining order. The State of Texas asserts that this case falls under the exception of *United States v. Wood,* 295 F.2d 772, which held that "when the denial of a temporary restraining order has the effect of ending the case, an appeal does lie as the appeal of a final order." 295 F.2d 772, 777 (5th Cir.1961), *cert. denied,* 369 U.S. 850, 82 S.Ct. 933, 8 L.Ed.2d 9 (1962). Since we have not reached the issue of the right to appeal or the merits of the appeal in considering the stay order, we pretermit consideration of the issue as to whether an appeal lies until that issue is reached in a consideration of the appeal.

STAY PENDING APPEAL IS TERMINATED.